UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------X
AARON TYK,

                                                                                        **TRIAL BY JURY DEMANDED**

                             PLAINTIFF,

      -V-

CITY OF NEW YORK,

NEW YORK CITY POLICE DEPARTMENT,                       **AMENDED COMPLAINT**
YANKY MEYER a/k/a JACOB MEYER a/k/a JACK MEYER,      13 CV 1532 (BMC) (LB)
JOSEPH ESPOSITO, JOHN SPRAGUE,
GEOFFREY GAETA, SEARGENT BARBIERI,
JOHN DOE 1, JOHN DOE 2, ERIC SURAT,

CIVILIAN COMPLAINT REVIEW BOARD, JOAN THOMPSON,

KINGS COUNTY DISTRICT ATTORNEY,
MRS. D'ATRI, CHARLES HYNES, HANNAH WHITE,
KENNETH P. THOMPSON, WOLF SENDER,
EMMA HOROWITZ, MATTHEW MIDEY, MATHEW SULLIVAN,

MAIMONIDES MEDICAL CENTER, JOYCE LEAHY, DEREK GOINS,
DOUGLAS JABLON, ALEXANDER J. D'ATRI,
PETER FERNANDEZ , ISHMAEL CASTILLLO,
MIKE ESPOSITO
                               :

                                       DEFENDANTS.
------------------------------------------------------------------------------X

Plaintiff. Aaron Tyk for his Complaint, alleges as follows:

## JURISDICTION

1. This action is brought for claims under federal law pursuant to the provisions of 42.U.S.C.§ §1983, and 1988 seeking damages to redress the deprivation, under color of state law, of rights secured to him under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution.

2. This action also seeks damages under state common law for false arrest, false imprisonment, malicious prosecution, infliction of physical pain, emotional distress, mental anguish, shame, humiliation, indignity, and damage to reputation.

3. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1343 (a)(3) and (4), which provides for original jurisdiction in this court of all suits brought pursuant to 42 U.S.C. §1983, and by 28 U.S.C. § 1331, which provides jurisdiction over all cases brought pursuant to the Constitution and laws of the Untied States.

4. This Court has pendant jurisdiction over Plaintiffs state law claims.

## VENUE

5. . Venue lies in this district pursuant to 28 U.S.C. §1391(b).

## PARTIES

6. Plaintiff is a United States citizen and resides in Kings County, City and State of New York

7. Defendant, CITY OF NEW YORK, (hereinafter referred to as ("NYC") is a municipal corporation and body politic, organized and existing under the Laws of the State of New York.

8. Defendant NEW YORK CITY POLICE DEPARTMENT, (" NYPD") is a municipal agency organized and existing under the Laws of the City of New York. At all relevant times hereto, NYC was responsible for making and enforcing the policies of the NYPD

9. Defendant CIVILIAN COMPLAINT REVIEW BOARD ("CCRB") is a municipal agency organized and existing under the Laws of the NYC. At all relevant times hereto, NYC was responsible for making and enforcing the policies of the CCRB.

10. Defendant KINGS COUNTY DISTRICT ATTORNEY, ("KCDA") is an agency organized and existing under the Laws of the City of New York. At all relevant times hereto, NYC was responsible for making and enforcing the policies of the DA

11. Defendant YANKY MEYER a/k/a JACOB MEYER/ a/k/a JACK MEYER, ("MEYER"), at all relevant times hereto was a Liaison for the NYPD, acted in that capacity as an agent, servant and/or employee of the NYPD, and was acting under color of State Law.. To wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York; and within the scope of his employment. He is named as a defendant both in his personal individual capacity in addition to his capacity as an agent, servant and/or employee of the NYPD.

12. Defendant JOSEPH ESPOSITO, at all relevant times hereto was Chief of Department of the NYPD, acted in that capacity as an agent, servant and/or employee of the NYPD, and was acting under color of State Law. To wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York; and within the scope of his employment. He is named as a defendant both in his personal individual capacity in addition to his capacity as an agent, servant and/or employee of the NYPD.

13. Defendant JOHN SPRAGUE (hereinafter "SPRAGUE"), at all relevant times hereto was a Deputy Inspector assigned to the 66th precinct of the NYPD, acted in that capacity as an agent, servant and/or employee of the NYPD, and was acting under color of State Law. To wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York; and within the scope of his employment. He is named as a defendant both in his personal individual capacity in addition to his capacity as an agent, servant and/or employee employee of the NYPD.

14. Defendant GEOFFREY GAETA, (hereinafter "GAETA"), at all relevant times hereto was a Lieutenant of the NYPD, acted in that capacity as an agent, servant and/or employee of the NYPD, and was acting under color of State Law. To wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York; and within the scope of his employment. He is named as a defendant both in his personal individual capacity in addition to his capacity as an agent, servant and/or employee of the NYPD.

15. Defendant SEARGENT BARBIERI, ("BARBIERI"), at all relevant times hereto was a Sergeant assigned to the 66th precinct of the NYPD, acted in that capacity as an agent, servant and/or employee of the NYPD, and was acting under color of State Law. .To wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York; and within the scope of his employment. He is named as a defendant both in his personal individual capacity in addition to his capacity as an agent, servant and/or employee of the NYPD.

16. Defendant JOHN DOE 1 was an employee assigned to the 66th precinct of the NYPD, acted in that capacity as an agent, servant and/or employee of Defendant NYC, and was acting under color of State Law. To wit, under the color of the statutes,

ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York; and within the scope of his employment. He is named as a defendant both in his personal individual capacity in addition to his capacity as an agent, servant and/or employee of the NYPD.

17. Defendant JOHN DOE 2 was an employee assigned to the 66th precinct of the NYPD, acted in that capacity as an agent, servant and/or employee of Defendant NYC, and was acting under color of State Law. To wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York; and within the scope of his employment. He is named as a defendant both in his personal individual capacity in addition to his capacity as an agent, servant and/or employee of the NYPD.

18. Defendant ERIC SURAT, shield #18137 ("SURAT"), at all relevant times hereto was a police officer assigned to the 66th precinct of the NYPD; acted in that capacity as an agent, servant and/or employee of the NYPD, and was acting under color of State Law. To wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York; and within the scope of his employment. He is named as a defendant both in his personal individual capacity in addition to his capacity as an employee of the NYPD.

19. Defendant JOAN THOMPSON,, (hereinafter "THOMPSON"), at relevant times hereto was Executive Director of the CCRB, acted in that capacity as an agent, servant and/or employee of the CCRB and was acting under color of State Law. To wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York; and within the scope of her employment. She is named as a defendant both in her personal individual capacity in addition to her capacity as an agent, servant and/or employee of the CCRB.

20. Defendant MRS. D'ATRI (hereinafter "MRS. D'ATRI"), IS THE WIFE OF DEFENDANT ALEXANDER J. D'ATRI. At all relevant times hereto MRS. D'ATRI was an employee of the KCDA, acted in that capacity as an agent, servant and/or employee of the DA and was acting under color of State Law.. To wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York; and within the scope of her employment. She is named as a defendant both in her personal individual capacity in addition to her capacity as an agent, servant and/or employee of the KCDA

21. Defendant CHARLES HYNES ("HYNES"), at relevant times hereto was the District Attorney of the KCDA, acted in that capacity as an agent, servant and/or employee of the office of KCDA and was acting under color of State Law. To wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York; and within the scope of his employment. He is named as a defendant both in his personal individual capacity in addition to his capacity as an agent, servant and/or employee of the KCDA

22. Defendant HANNAH WHITE (hereinafter "WHITE"), at all relevant times hereto was a Liaison employee of the KCDA, acted in that capacity as an agent, servant and/or employee of the KCDA and was acting under color of State Law.. To wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York; and within the scope of her employment. She is named as a defendant both in her personal individual capacity in addition to her capacity as an agent, servant and/or employee of the KCDA

23. Defendant KENNETH P. THOMPSON, ("THOMPSON"), at relevant times hereto was the District Attorney of the KCDA, acted in that capacity as an agent, servant and/or employee of the KCDA and was acting under color of State Law.. To wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York; and within the scope of his employment. He is named as a defendant both in his personal individual capacity in addition to his capacity as an agent, servant and/or employee of the KCDA

24. Defendant WOLF SENDER ("SENDER"), at all relevant times hereto was a community liaison for the KCDA, acted in that capacity as an agent, servant and/or employee of the KCDA and was acting under color of State Law.. To wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York; and within the scope of his employment. He is named as a defendant both in his personal individual capacity in addition to his capacity as an agent, servant and/or employee of the KCDA

25. Defendant EMMA HOROWITZ, ("HOROWITZ"), at all relevant times hereto was an employee of the KCDA, acted in that capacity as an agent, servant and/or employee of the KCDA and was acting under color of State Law.. To wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York; and within the scope of his employment. She is named as a defendant both in her personal individual capacity in addition to her capacity as an agent, servant and/or employee of the KCDA

26. Defendant MATTHEW MIDEY, ("MIDEY"), at all relevant times hereto was an employee of the KCDA, acted in that capacity as an agent, servant and/or employee of the KCDA and was acting under color of State Law.. To wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York; and within the scope of his employment. He is named as a defendant both in his personal individual capacity in addition to his capacity as an agent, servant and/or employee of the KCDA

27. Defendant MATHEW SULLIVAN, ("SULLIVAN"), at all relevant times hereto was an employee of the KCDA, acted in that capacity as an agent, servant and/or employee of the KCDA and was acting under color of State Law.. To wit, under the color of the statutes, ordinances, regulations, policies, customs and usages of the State of New York and/or the City of New York; and within the scope of

his employment. He is named as a defendant both in his personal individual capacity in addition to his capacity as an agent, servant and/or employee of the KCDA

28. Defendant, MAIMONIDES MEDICAL CENTER ("MMC") is a corporation organized and existing under the Laws of the State of New York.

29. Defendant DEREK GOINS, ("GOINS"), at all relevant times hereto was an employee of the MMC, acted in that capacity as an agent, servant and/or employee of the MMC. He is named as a defendant both in his personal individual capacity in addition to his capacity as an agent, servant and/or employee of the MMC

30 Defendant JOYCE LEAHY, (hereinafter "LEAHY"), at all relevant times hereto was general counsel of MMC, acted in that capacity as an agent, servant and/or employee of the MMC. He is named as a defendant both in her personal individual capacity in addition to her capacity as an agent, servant and/or employee of the MMC

31. Defendant DOUGLAS JABLON, at all relevant times hereto was general counsel of MMC, acted in that capacity as an agent, servant and/or employee of the MMC. He is named as a defendant both in her personal individual capacity in addition to her capacity as an agent, servant and/or employee of the MMC.

32. Defendant ALEXANDER D'ATRI, ("D'ATRI"), at all relevant times hereto was the Director of Security of the MMC, acted in that capacity as an agent, servant and/or employee of the MMC. He is named as a defendant both in his personal individual capacity in addition to his capacity as an agent, servant and/or employee of the MMC

33. Defendant PETER FERNANDEZ, (hereinafter "FERNANDEZ,"), at all relevant times hereto was a security officer of the MMC, acted in that capacity as an agent, servant and/or employee of the MMC. He is named as a defendant both in his personal individual capacity in addition to his capacity as an agent, servant and/or employee of the MMC

34. Defendant ISHMAEL CASTILLLO, ("CASTILLO"), at all relevant times hereto was a security officer of the MMC, acted in that capacity as an agent, servant and/or employee of the MMC. He is named as a defendant both in his personal individual capacity in addition to his capacity as an agent, servant and/or employee of the MMC

35. Defendant MIKE ESPOSITO, was previously the Director of Security. He is named as a defendant both in his personal individual capacity in addition to his capacity as an agent for the MMC

# FACTS

36. On the morning of March 29, 2012, Plaintiff was called and asked to come to MMC. He arrived at the hospital about 9:00, and there being no parking available, Plaintiff parked his car on the public street in violation of a NYC ordinance.

37. When he returned to his car at about 9:40, the car was not there

38. He was approached by CASTILLO and FERNANDEZ and who informed Plaintiff that MMC had towed the vehicle. Plaintiff was upset about this and when Plaintiff inquired about retrieving the car Plaintiff was told to call 311. Plaintiff left and proceeded to go home.

39. Plaintiff was called back by CASTILLO and FERNANDEZ, who were now joined by D'ATRI. D'ATRI,started yelling and berating plaintiff about Plaintiff having parked the car illegally. D'ATRI was getting animated started acting in a very inappropriate fashion. D'ATRI started moving in towards Plaintiff.

40. Plaintiff took out his cell phone to video D'ATRI. D'ATRI grabbed the cell phone from Plaintiff saying "don't you know after 9/11 you are not allowed to video a hospital.

41. D'ATRI then directed CASTILLO and FERNANDEZ to cuff plaintiff. CASTILLO and FERNANDEZ forcefully grabbed Plaintiffs hands, pulled them behind Plaintiffs back and cuffed Plaintiff; causing Plaintiff physical pain.

42. CASTILLO and FERNANDEZ then marched Plaintiff to the side of the MMC buikding CASTILLO and FERNANDEZ directed him Plaintiff stand facing Fort Hamilton Parkway, a major thorofare in the neighborhood.

43. Plaintiff asked CASTILLO and FERNANDEZ to go in the shade. CASTILLO and FERNANDEZ refused Plaintiff asked CASTILLO and FERNANDEZ to sit dow. CASTILLO and FERNANDEZ refused. Plaintiff asked CASTILLO and FERNANDEZ to use the mens room CASTILLO and FERNANDEZ refused

44. There is a very close relationship between MMC and the NYPD. MMC hires people with relationship to the NYPD. It is understood that the NYPD would be of assistance when called on

45. At the most recent annual meeting of MMC's Council of Community Organizations, there were several Chiefs of the NYPD attended To Wit, DATRI had worked for many years at NYPD headquarters DATRI also worked for many years at the 66th precinct

46.	FERNANDEZ called MEYER, who arrived about !0:05. FERNANDEZ called MIKE ESPOSITO. MIKE ESPOSITO is related to JOSEPH ESPOSITO

47.	911 was never called  Instead the 66th precinct, the people with whom D'ATRI had a relationship, were called directly . After about 45 minutes BARBIERI and Surat arrived

48.	Plaintiff was brought into the MMC building. MMC removed its cuff and SURAT placed NYPD cuffs

49.	SURAT used excessive force when placing the handcuffs . SURAT made the cuffs extra tight, causing them to cut into plaintiff's skin. This is not the first instance of excessive force by SURAT . SURAT is currently a defendant in another matter where plaintiff's alleges excessive force by SURAT.

.50.	When plaintiff complained to SURAT that the cuffs were too tight and he was suffering excessive pain,. SURAT responded by saying it was against NYPD policy for SURAT to loosen the handcuffs.

.51.	Because of continuing pain  in Plaintiff's hands, on April 5, 2012, plaintiff consulted with a  neurologist who made a diagnosis of *Cheiralgia Paresthetica*, bilateral radial nerve damage. .The neurologist further found that the incident of March 29, 2012 was the proximate cause for this diagnosis.

52	After placing the cuffs SURAT took Plaintiff's wallet from Plaintiff Not withstanding that Plaintiff's license was in the front of the wallet, SURAT rifled through the wallet. He inquired of Plaintiff regarding other documents which were in the wallet  Plaintiff told SURAT that what he was doing was illegal search and seizure and that Plaintiff would have SURAT disciplined. SURAT ignored this admonishment and responded by saying that He said that if you don't tell me Ill call them and ask them

53.	Subsequently Plaintiff was driven to the station house by SURAT with BARBIERI in the front passenger seat. While in the car, Plaintiff told BARBIERI that he wanted to file a complaint against the MMC employees. BARBIERI refused.

54.	Plaiontiff arrived at the Precinct about 11:30  Upon arrival, Plaintiff was placed locked in a "cage" SURAT then proceeded to process the paper work

55.	Datri AND Fernandez  signed a false complaint with the NYPD Datri signed another false affidavit opm may 8 2012

56.	The Complaint prepared  has a charge of Trespass, which is beyond the pale of the underlying facts.

57.	At about 3:00 , the JOHN DOE 1 came to the cage me to discuss with me the contents in my wallet.

58. At about 4:00, I called out to JOHN DOE 2 and asked to have some kosher food ordered. He said you don't get kosher, you can get the Chinese stuff that I am eating.

59. On March 29, 2012, Plaintif faxed and emailed a letter to Kelly regarding the above referenced incidents Plaintiff did not receive a response.

60. On March 30, 2012 Plaintif faxed a letter to Piniero regarding the above referenced incidents Plaintiff never received any response

61. On March 30, 2012 Plaintif faxed a letter to campisi Kelly regarding the above referenced incidents to

62. On March 30, 2012 Plaintif faxed a letter to campisi Kelly regarding the above referenced incidents to Plaintiff did not receive a response.

63. Plaintiff filed several complaints with the CCRB. On April 4, 2012, Plaintiff faxed and mail a letter to thompson regarding the above referenced incidents Plaintiff was never apprised about the outcome of any investigation
.

64. On April 5, 2012, Plaintiff sent a certified letter to Lemi requesting the pre4swervation od videos.

65. On or about Aprile 5, 2012, Plaintiff spoke with Douglas Jablon who stated clearly that he would tell D'Atri to save the videos,

66. Plaintiff asked his Councilman to intercede with SPRAGUE, so that Plaintiff could file a criminal complaint. The Councilman apprised plaintiff that he spoke to Spargue, but that he was rebuffed.

67. The criminal case made its way through the system over a period of 24 months.

68. During this period, there were numerous Court appearances.

69. Plaintiff asked his Councilman to intercede on Plaintiff's behalf with the KCDA.

70. The Councilman apprised Plaintff that the Councilman had tried several times, but got nowhere.

71. HOROWITZ, MIDEY, SULLIVAN were the ADA's who prosecuted the case for the the KCDA

72. Several Judges reacted with dismay when advised by the ADA that there was no offer of an ACD

73. The Court issued a subpeone for the production od the videos referred to in paragrapj

74. MMC responded that no cvideao exist.

75. During the 24 month that the criminal trial was pending, MRS. D'ATRI, HYNES, WHITE, THOMPSON, SENDER, HOROWITZ, MIDEY, SULLIVAN, had knowledge and discussions about the case

76. Not withstanding that they should have been aware that the case lacked merit, the KCDA continued with the prosecution

77. Not withstanding that they should have been aware that **WIFE OF THE COMPLAINTANT WORKED FOR THE KCDA**, they continued with the case.

78. Only on the last day of trial, two years into the criminal proceeding and after multiple appearances, did the ADA disclose that MRS. D'ATRI, wife of D'ATRI worked for the KCDA.

79. Such conduct is nothing less than unethical, outrageous and appalling.

80. Federal Judges of this Court have recently made statements critical of the professionalism of the KCDA

81. It has been reported that the offices of the United States Attorney and the New York State Attorney General are actively investigating HYNES.

82. The NYC Department of Investigation has recently issued a report extremely critical of HYNES, and making serious accusations.

83. This case is just another of a pattern of unethical conduct on the part of employees at the KCDA,

84. Additionally, at the trial, the Judge directed the jury that they can draw a negative inference for the failure of the KCDA to appear as had been requested.

85. Additionally, CASTILLLO, who was in the employ of MMC at the time of trial, was on the KCDA's witness list . He did not come to Court to testify.

86. A negative inference could have been drawn that he refused to testify and commit perjury

87. After months of numerous court appearances, and several days of trial, Plaintiff was found not guilty of all charges.

# CAUSES OF ACTION

## EXCESSIVE FORCE
### 42 U.S.C. §1983,

88. Paragraphs 1 through 87 are hereby realleged and incorporated by reference herein.

89. That the use of excessive force in effectuating the arrest was unreasonable under the circumstances.

90. . That Defendants had no legal cause or reason to use excessive force in effectuating Plaintiff's arrest.

91. That Defendants violated Plianitiff's Fourth and Fourteenth Amendment right when excessive force was used against him.

92. That at the time of the arrest, Plaintiff did not pose a threat to the safety of the Defendants or others. That Plaintiff was not actively resisting arrest or attempting to evade arrest. That Defendants, NEW YORK CITY POLICE DEPARTMENT, (" NYPD") unlawfully subjected Plaintiff to excessive force while effectuating his arrest.

93. That Defendants through its officers, agents, and employees, unlawfully subjected Plaintiff to excessive force while effectuating his arrest.

94. That the acts and omissions ofDefendants , actions were grossly disproportionate to the need for action and were unreasonable under the circumstances.

95. The Defendants acted under pretense and color of the State Law and in their individual official capacities. without authority of law and constituted a severe abuse of their powers.

96. That Defendants, acting under color of state law and within the scope of this authority, in gross and wanton disregard of Plaintiff's rights, subjected Plaintiff to excessive force while effectuating his arrest, in violation of his rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

97. That upon belief, there is routine practice of on the part of Defendants of using excessive force when effectuating arrests.

98. That upon belief, it was the policy and/or custom of defendants to inadequately train, supervise, discipline, and/or terminate their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents and employees.

99. That as a result of the above Defendants and the officers, staff, agents and employees of Defendants, believed that their actions would not be properly monitored by supervisory officers and that the misconduct would not be investigated or sanctioned, but would be tolerated.

100. That the above described policies and customs demonstrate a deliberate indifference on the part of the policymakers of Defendants to the constitutional rights of arrestees and were the cause of the violations of plaintiff's rights alleged herein.

101. Defendants acted intentionally, willfully, knowingly and with the specific intent to deprive Plaintiff of her constitutional rights as secured by 42 U.S.C. §1983, and by the 4th, 5th, 6th, 8th and 14th Amendments to the United States Constitution.

102. The Defendants, deprived Plaintiff of the rights, remedies, privileges and immunities guaranteed to every citizen of the United States of America, all of which was in violation of 42 U.S.C. §1983. The rights of the Plaintiff, as guaranteed by the 4th, 5th, 6th, 8th and 14th Amendments to the United States Constitution, have been violated.

103. Upon information and belief, the acts complained of by Plaintiff herein are a direct and proximate result of the conduct and practices of the Defendants City of New York and/or the New York City Police Department employees and representatives, and constituted tacit authorization of, and gross indifference to, the pattern of unconstitutional conduct by the individual Defendants, and Defendant City of New York and its Police Department, and the knowing failure to train, supervise or properly discipline the individual Defendants.

104. By reason of the foregoing, the Defendant, the City of New York and its Police Department have engaged in an official policy, practice and custom which, through the acts of the individual Defendants, were in furtherance thereof, and have deprived Plaintiff of the rights, remedies, privileges and immunities guaranteed to every citizen of the United States and were in violation of 42 U.S.C. §1983, and have deprived Plaintiff of his rights as guaranteed by the 4th, 5th, 6th, 8th and 14th Amendments to the United States Constitution.

105. Based upon the allegations as set forth herein, As a direct and proximate result of the misconduct of the Defendants as aforedescribed, and the wrongful acts and abuses of authority as detailed above, the Defendants have violated the Plaintiff's rights

to be free from false arrest, false imprisonment, gender discrimination, malicious prosecution and intentional infliction of emotional distress.

106.	Plaintiff sustained the damages hereinbefore alleged of emotional distress and physical pain, and physical damage, which may be paermanent. .

## ILLEGAL SEIZURE
### 42 U.S.C. §1983,

Paragraphs 1 through 87 are hereby realleged and incorporated by reference herein.

107.	That Defendants had no legal cause or reason to seizef Plaintiff's wallet and cellphone

108.	That the search and seizure of Plaintiff's wallet and cellphone was illegal

109.	That the acts and omissions ofDefendants , actions were grossly disproportionate to the need for action and were unreasonable under the circumstances.

110.	The Defendants acted under pretense and color of the State Law and in their individual official capacities. without authority of law and constituted a severe abuse of their powers.

111.	That Defendants, acting under color of state law and within the scope of this authority, in gross and wanton disregard of Plaintiff's rights, subjected Plaintiff to illegal search and seizure, in violation of his rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

112.	That upon belief, there is routine practice of on the part of Defendants of illegal search and seizure when effectuating arrests.

113.	That upon belief, it was the policy and/or custom of defendants to inadequately train, supervise, discipline, and/or terminate their officers, staff, agents and employees, thereby failing to adequately discourage further constitutional violations on the part of their officers, staff, agents and employees.

114.	That as a result of the above Defendants and the officers, staff, agents and employees of Defendants, believed that their actions would not be properly monitored by supervisory officers and that the misconduct would not be investigated or sanctioned, but would be tolerated.

115.	That the above described policies and customs demonstrate a deliberate indifference on the part of the policymakers of Defendants to the constitutional rights of arrestees and were the cause of the violations of plaintiff's rights alleged herein.

116.  Defendants acted intentionally, willfully, knowingly and with the specific intent to deprive Plaintiff of her constitutional rights as secured by 42 U.S.C.§1983, and by the 4th, 5th, 6th, 8th and 14th Amendments to the United States Constitution.

117.  The Defendants, deprived Plaintiff of the rights, remedies, privileges and immunities guaranteed to every citizen of the United States of America, all of which was in violation of 42 U.S.C.§1983. The rights of the Plaintiff, as guaranteed by the 4th, 5th, 6th, 8th and 14th Amendments to the United States Constitution, have been violated.

118.  Upon information and belief, the acts complained of by Plaintiff herein are a direct and proximate result of the conduct and practices of the Defendants ,. employees and representatives, and constituted tacit authorization of, and gross indifference to, the pattern of unconstitutional conduct by the Defendants, and Defendant City of New York and its Police Department, and the knowing failure to train, supervise or properly discipline the individual Defendants.

119.  By reason of the foregoing, the Defendants, have engaged in an official policy, practice and custom which, through the acts of the individual Defendants, were in furtherance thereof, and have deprived Plaintiff of the rights, remedies, privileges and immunities guaranteed to every citizen of the United States and were in violation of 42 U.S.C. §1983, and have deprived Plaintiff of his rights as guaranteed by the 4th, 5th, 6th, 8th and 14th Amendments to the United States Constitution.

120.  Based upon the allegations as set forth herein, As a direct and proximate result of the misconduct of the Defendants as aforedescribed, and the wrongful acts and abuses of authority as detailed above, the Defendants have violated the Plaintiff's rights to be free from illegal seizure,

**ILLEGAL SEARCH**
42 U.S.C. §1983,

Paragraphs 1 through 87 are hereby realleged and incorporated by reference herein.

121.  That Defendants SURAT and JOHN DOE 1 had no legal cause or reason to search Plaintiff's wallet

122.  That the search of Plaintiff's wallet was illegal

123.  The Defendants SURAT and JOHN DOE 1 acted under pretense and color of the State Law and in their individual official capacities. without authority of law and constituted a severe abuse of their powers.

124. That Defendants SURAT and JOHN DOE 1 , acting under color of state law and within the scope of this authority, in gross and wanton disregard of Plaintiff's rights, subjected Plaintiff to illegal search , in violation of his rights pursuant to the Fourth and Fourteenth Amendments of the United States Constitution.

125. Defendants SURAT and JOHN DOE 1 acted intentionally, willfully, knowingly and with the specific intent to deprive Plaintiff of her constitutional rights as secured by 42 U.S.C.§1983, and by the 4th, 5th, 6th, 8th and 14th Amendments to the United States Constitution.

126. The Defendants, deprived Plaintiff of the rights, remedies, privileges and immunities guaranteed to every citizen of the United States of America, all of which was in violation of 42 U.S.C.§1983. The rights of the Plaintiff, as guaranteed by the 4th, 5th, 6th, 8th and 14th Amendments to the United States Constitution, have been violated.

127. Upon information and belief, the acts complained of by Plaintiff herein are a direct and proximate result of the conduct and practices of the Defendants ,. employees and representatives, and constituted tacit authorization of, and gross indifference to, the pattern of unconstitutional conduct by the Defendants, and Defendant City of New York and its Police Department, and the knowing failure to train, supervise or properly discipline the individual Defendants.

128. By reason of the foregoing, the Defendants, have engaged in an official policy, practice and custom which, through the acts of the individual Defendants, were in furtherance thereof, and have deprived Plaintiff of the rights, remedies, privileges and immunities guaranteed to every citizen of the United States and were in violation of 42 U.S.C. §1983, and have deprived Plaintiff of his rights as guaranteed by the 4th, 5th, 6th, 8th and 14th Amendments to the United States Constitution.

129. Based upon the allegations as set forth herein, As a direct and proximate result of the misconduct of the Defendants as aforedescribed, and the wrongful acts and abuses of authority as detailed above, the Defendants have violated the Plaintiff's rights to be free from illegal seizure,

**Denial of Equal Protection**
42 U.S.C. §1983,

Paragraphs 1 through 87 are hereby realleged and incorporated by reference herein
.

130. That Defendants denied Plaintiff the right to file a criminal complaint. Said right was afforded to D'Atri and denied to Plaintiff..

131. That the denial of the right to file a criminal complaint was illegal

132. The Defendants acted intentionally, willfully, knowingly, under pretense and color of the State Law and in their individual official capacities. without authority of law and constituted a severe abuse of their powers.

133. That Defendants, acting under color of state law and within the scope of this authority, in gross and wanton disregard of Plaintiff's rights, violated his rights pursuant to the Fourth fifth and Fourteenth Amendments of the United States Constitution.

134. By reason of the foregoing, the Defendants, have engaged in an official policy, practice and custom which, through the acts of the individual Defendants, were in furtherance thereof, and have deprived Plaintiff of the rights, remedies, privileges and immunities guaranteed to every citizen of the United States and were in violation of the United States Constitution.

### Denial of kosher food
### 42 U.S.C. §1983,

Paragraphs 1 through 87 are hereby realleged and incorporated by reference herein

135. That Defendant John Doe 2 denied Plaintiff the right to purchase kosher food from funds available to him.

136. The Defendant John Doe 2 acted under pretense and color of the State Law and in his individual official capacity. without authority of law and constituted a severe abuse of his powers.

137. That Defendants, acting under color of state law and within the scope of this authority, in gross and wanton disregard of Plaintiff's rights, violated his rights pursuant to the United States Constitution.

138. That the above described policies and customs demonstrate a deliberate indifference on the part of Defendants to the constitutional rights of arrestees and were the cause of the violations of plaintiff's rights alleged herein.

`139. Defendant John Doe 2 acted intentionally, willfully, knowingly and with the specific intent to deprive Plaintiff of her constitutional rights as secured by the United States Constitution.

140. Upon information and belief, the acts complained of by Plaintiff herein are a direct and proximate result of the conduct and practices of the Defendants ,.

employees and representatives, and constituted tacit authorization of, and gross indifference to, the pattern of unconstitutional conduct by the Defendants, and Defendant City of New York and its Police Department, and the knowing failure to train, supervise or properly discipline the individual Defendants.

141.. By reason of the foregoing, the Defendants, have engaged in an official policy, practice and custom which, through the acts of the individual Defendants, were in furtherance thereof, and have deprived Plaintiff of the rights, remedies, privileges and immunities guaranteed to every citizen of the United States and were in violation of the United States Constitution.

142. Based upon the allegations as set forth herein, As a direct and proximate result of the misconduct of the Defendants as aforedescribed, and the wrongful acts and abuses of authority as detailed above, the Defendants have violated the Plaintiff's rights to practice his religion.

## **EXCESSIVE FORCE**
State Law

Paragraphs 1 through 87 are hereby realleged and incorporated by reference herein.

143. That the use of excessive force in effectuating the seizure was unreasonable under the circumstances.

144. . That Defendants had no legal cause or reason to use excessive force in effectuating Plaintiff's arrest.

145. That at the time of the arrest, Plaintiff did not pose a threat to the safety of the Defendants or others.

146. That Plaintiff was not actively resisting arrest or attempting to evade arrest.

147. That Defendants, unlawfully subjected Plaintiff to excessive force while effectuating his arrest.

148. That Defendants through its officers, agents, and employees, unlawfully subjected Plaintiff to excessive force while effectuating his arrest.

149. That the acts and omissions of Defendants, actions were grossly disproportionate to the need for action and were unreasonable under the circumstances.

150. Upon information and belief, the acts complained of by Plaintiff herein are a direct and proximate result of the conduct and practices of the Defendants City of New York and/or the New York City Police Department employees and representatives,

and constituted tacit authorization of, and gross indifference to, the pattern of unconstitutional conduct by the individual Defendants, and Defendant City of New York and its Police Department, and the knowing failure to train, supervise or properly discipline the individual Defendants.

151. Based upon the allegations as set forth herein, As a direct and proximate result of the misconduct of the Defendants as afore described, and the wrongful acts and abuses of authority as detailed above, the Defendants have violated the Plaintiff's rights to be free from excessive force.

152. Plaintiff sustained the damages hereinbefore alleged of emotional distress and physical pain, and physical damage, which may be permanent. .

### False Arrest and malicious prosecution
### STATE LAW

Paragraphs 1 through 87 are hereby realleged and incorporated by reference herein.

153. That Defendant D'Atri had no basis to file a criminal complaint against Plaintiff

154. That at the time of the arrest, Plaintiff did not pose a threat to the safety of the Defendants or others.

155 That Defendant D'Atri unlawfully filed a complaint against Plaintiff .

156 That as a result of D'Atri's unlawful complaint, Plaintiff was subjected to unlawful arrest and subsequent unlawful prosecution.

157 Plaintiff sustained the damages hereinbefore alleged of emotional distress and physical pain, and physical damage, which may be permanent. .

### Malicious Prosecution DA.

Paragraphs 1 through 87 are hereby realleged and incorporated by reference herein.

158 That Defendants had no basis to pursue the criminal proceeding against Plaintiff

159   That the criminal proceeding was malicious and Defendants unlawfully subjected Plaintiff to malicious and unlawful prosecution.

160   Plaintiff sustained the damages hereinbefore alleged.

WHEREFORE, Plaintiff respectfully requests that judgment be entered:

On the First Cause of action:
   Awarding Plaintiff compensatory damages in the amount of $500,000.00Should Plaintiff obtain counsel, awarding reasonable attorney's fees pursuant to 42 USC § 1988

On the Second Cause of action:
   Awarding Plaintiff compensatory damages in the amount of $500,000.00Should Plaintiff obtain counsel, awarding reasonable attorney's fees pursuant to 42 USC § 1988;

On the Third Cause of action:
   Awarding Plaintiff compensatory damages in the amount of $500,000.00Should Plaintiff obtain counsel, awarding reasonable attorney's fees pursuant to 42 USC § 1988

On the Fourth Cause of action:
   Awarding Plaintiff compensatory damages in the amount of $500,000.00 Should Plaintiff obtain counsel, awarding reasonable attorney's fees pursuant to 42 USC § 1988

On the Fifth Cause of action:
   Awarding Plaintiff compensatory damages in the amount of $500,000.00 Should Plaintiff obtain counsel, awarding reasonable attorney's fees pursuant to 42 USC § 1988

On the Sixth Cause of action:
   Awarding Plaintiff compensatory damages in the amount of $500,000.00

On the Seventh Cause of action:
   Awarding Plaintiff compensatory damages in the amount of $500,000.00

On the Eighth Cause of action:
   Awarding Plaintiff compensatory damages in the amount of $500,000.00

_____
Aaron Tyk
5014-16th Avenue
Brooklyn, New York